**In the Interest of C.A.J., A Child.**

**No. 2–03–092–CV.**

Court of Appeals of Texas,
Fort Worth.

Nov. 20, 2003.

David A. Pearson, IV, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Michael R. Casillas, Melissa Paschall, Asst. Criminal District Attorneys, Fort Worth, for State.

Panel F: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

Appellant, C.J., appeals from the trial court's order terminating her parental rights with regard to her child C.A.J. In a single point, appellant complains that the evidence was factually insufficient to support the court's conclusion that termination of the parent-child relationship was in the child's best interest. We affirm.

## FACTS

Appellant gave birth to C.A.J., her third child, on April 19, 2002. When C.A.J. was born, she tested positive for cocaine. In response, the hospital called Child Protective Services (C.P.S.) to report the abuse. At the hospital, appellant admitted to the C.P.S. worker that she took crack cocaine on a daily basis while she was pregnant with C.A.J.

Due to the Texas Department of Protective and Regulatory Services' (D.P.R.S.) ruling that C.A.J. had been abused, shortly after her birth C.P.S. removed her from appellant's care and placed her in foster care. Initially, C.P.S. considered appellant's mother, JoAnn Wilson ("Wilson"), as a placement option for the child, but she withdrew her name from consideration. Consequently, C.P.S. placed the child with Karen Eckman ("Eckman"), appellant's sister in California. The Eckmans took possession of C.A.J. with an understanding that they would ultimately adopt C.A.J.

Wilson testified that when she withdrew her name from consideration as an option

for placement for C.A.J., she recommended Eckman as a potential placement option. However, Wilson also stated that when she recommended Eckman, she did not think that Eckman planned to adopt C.A.J. Additionally, Wilson claimed that she was unaware that she could be reconsidered for placement. Appellant testified that she was unable to care for the child on her own. Appellant also admitted that it was probably in the child's best interest to live with her sister.

Aisha Anderson, the C.P.S. caseworker assigned to C.A.J. in July 2002, testified that she tried to set up visitation appointments between C.A.J. and appellant, but had been unable to do so because she could not locate appellant. After appellant was incarcerated, Anderson arranged the only visit that occurred between C.A.J. and appellant by taking C.A.J. to visit at the jail. Anderson noted that no bonding had occurred between appellant and the child.

During the termination proceedings, appellant was pregnant with her fourth child. Her second child lives with appellant's mother, and her first child lives with another relative. Appellant admitted to using drugs during all of her pregnancies. In addition to drug addiction, appellant also suffers from bipolar disorder and schizophrenia. Appellant has twice been convicted of prostitution and at least twice for assault. At the time of trial, appellant was serving a fifteen-month sentence for a felony level theft conviction and could not provide a stable home for C.A.J. Based upon this evidence, the trial court concluded that it was in the child's best interest to terminate appellant's parental rights.

## ANALYSIS

■ In appellant's sole point, she complains that the evidence was factually insufficient to support the trial court's conclusion that termination of the parent-child relationship was in the child's best interest. A parent's rights to "the companionship, care, custody and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex.2002). In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. TEX. FAM.CODE ANN. § 161.206(b) (Vernon 2002); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re D.T.*, 34 S.W.3d 625, 630 (Tex.App.-Fort Worth 2000, pet. denied) (op. on reh'g).

■ In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001; *Richardson v. Green*, 677 S.W.2d 497, 499 (Tex.1984); *Swate v. Swate*, 72 S.W.3d 763, 766 (Tex.App.-Waco 2002, pet. denied). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't*

*of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987).

■ Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by "clear and convincing evidence." TEX. FAM. CODE ANN. § 161.206(a) (Vernon Supp.2004); *In re G.M.,* 596 S.W.2d 846, 847 (Tex. 1980). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *G.M.,* 596 S.W.2d at 847; *D.T.,* 34 S.W.3d at 630. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.CODE ANN. § 101.007. The higher burden of proof in termination cases alters the appellate standard of factual sufficiency review. *In re C.H.,* 89 S.W.3d at 25. "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *Id.* In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction" that the grounds for termination were proven. *Id.* Our inquiry here is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated one of the conduct provisions of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child. *Id.* at 28.

■ Specifically, the State alleged and the court found that appellant's conduct had violated sections 161.001(1)(D), (E), and (R) of the Texas Family Code. TEX. FAM.CODE ANN. §§ 161.001(1)(D), (E), (R). Subsection D states that the court may terminate the parent-child relationship if the court finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *Id.* § 161.001(1)(D). Subsection E provides another basis for termination if a parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* § 161.001(1)(E). Subsection R provides for termination when the parent has "been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription, as defined by Section 261.001." *Id.* § 161.001(1)(R). The State need only present sufficient evidence to support one of the section 161.001(1) factors and show that termination is in the best interest of the child under section 161.001(2). *Id.* § 161.001; *see In re W.J.H.,* 111 S.W.3d 707, 714 (Tex.App.-Fort Worth 2003, pet. denied); *In re W.S.,* 899 S.W.2d 772, 776 (Tex.App.-Fort Worth 1995, no writ). Because appellant's argument is limited to the issue of whether termination of the parent-child relationship was in the best interest of the child, that is the only prong we need to address.

■ The primary focus of appellant's argument is that there is no evidence to show that the child would be better off if placed with appellant's sister than she would be if placed with appellant's mother. When ascertaining what is in the best interest of the child, we look at the following nonexclusive list of factors first set out by the Texas Supreme Court in *Holley v. Adams,* 544 S.W.2d 367 (Tex.1976):

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future;

(3) the emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individuals seeking custody;

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.

*Id.* at 371–72. These factors are not exhaustive. Some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *C.H.,* 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the children. *Id.* On the other hand, the presence of scant evidence relevant to each *Holley* factor will not support such a finding. *Id.*

■■■ In addition to the above, a parent's inability to provide adequate care for the child, lack of parenting skills, poor judgment, and repeated instances of immoral conduct may also be considered when looking at best interest. *See Garza v. Tex. Dept. of Human Servs.,* 794 S.W.2d 521, 525 (Tex.App.-Corpus Christi 1990, no writ) (holding that a parent's lack of judgment, parenting skills, failure to provide adequate nutrition to her children, instructing them to disobey their foster parents, and skip school, are all factors to consider in a parental termination); *Sanchez v. Tex. Dept. of Human Res.,* 581 S.W.2d 260, 265–66 (Tex.Civ.App.-Corpus

Christi 1979, no writ) (holding that the parent's poor prognosis regarding her ability to learn to care for her children is a factor to consider in terminating the parent-child relationship); *Coleman v. Tex. Dept. of Pub. Welfare,* 562 S.W.2d 554, 557 (Tex.Civ.App.-Tyler 1978, writ ref'd n.r.e.) (considering the fact that the parent was living with someone to whom she was not married in determining whether to terminate the parent-child relationship); *D.F. v. State,* 525 S.W.2d 933, 940 (Tex.Civ.App.-Houston [1st Dist.] 1975, writ ref'd n.r.e.) (op. on reh'g) (considering the parent's unstable employment history in determining the best interest of the child); *Magallon v. State,* 523 S.W.2d 477, 479 (Tex.Civ.App.-Houston [1st Dist.] 1975, no writ) (considering the parent's repeated instances of unwed motherhood in determining whether termination was in the child's best interest).

■■■ In the case at bar, it is undisputed that appellant used illegal drugs during her pregnancy with C.A.J., as well as during her first two pregnancies and current pregnancy. The fact that appellant repeatedly exposed her unborn children to cocaine or methamphetamine may be considered in determining whether appellant endangered the well-being of her children. *See Holley,* 544 S.W.2d at 371–72; *In re W.E.C.,* 110 S.W.3d 231, 239 (Tex.App.-Fort Worth 2003, no pet.). Appellant has been a drug addict for thirteen years and has enrolled in at least four different drug treatment programs, but failed to complete any of them. Appellant's drug addiction clearly poses an emotional and physical danger to C.A.J. now and in the future.

Appellant freely admits that she is unable to care for the child herself. She has no stable source of income or permanent home and spent most of her time prior to being in jail, living in motels or at the

Salvation Army. Without stability, income, or a home, appellant is unable to provide for the child's emotional and physical needs. Moreover, appellant's unstable life threatens the physical well-being of the child and may put the child at risk of injury.

Appellant wisely concedes that it is not in the best interest of the child to retain custody of the child herself. However, appellant argues that it will not be in the child's best interest to live in California with appellant's sister because the child will be far away and will never be allowed to see appellant or her maternal grandmother. Essentially, appellant fears that if the child is adopted by appellant's sister, C.A.J. will never know appellant's "side to the story" and will grow up hating appellant. Yet, this has nothing to do with the child's best interest.

Testimony at trial reflected that C.A.J. was doing well since her placement with the Eckmans. Anderson testified that Eckman maintained more than the required contact with D.P.R.S., in contrast to appellant and her mother who have both failed to cooperate with the state agencies in the past. In particular, appellant failed to stay in contact with her caseworker, failed to complete drug rehabilitation programs, and failed to complete her assigned C.P.S. service plan.

Appellant argues that it is in the best interest of the child to be placed with appellant's mother, Wilson, because her second child lives with Wilson and is doing well. However, Wilson herself admitted to withdrawing from consideration as a placement for C.A.J. Moreover, she recommended Eckman as a suitable placement. Wilson implied that she would like to be reconsidered as a placement for C.A.J., but admitted to never contacting the C.P.S. investigator to make her desire for reconsideration known. Additionally, no evidence was presented to show that placement of C.A.J. with the Eckmans would not be in her best interest.

In light of the evidence of appellant's continuous and long-term drug use, her unstable lifestyle, and criminal record, we hold that the evidence is factually sufficient to support the trial court's conclusion that termination of the parent-child relationship was in the child's best interest. Accordingly, we overrule appellant's sole point. Therefore, we affirm the trial court's order terminating the parent-child relationship in its entirety.