COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-04-372-CV

 

 

IN THE INTEREST OF                                                                            

 

 

D.S., JR., A CHILD                                                                              

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Introduction

Appellant Amanda W. appeals
the trial court=s order
terminating her parental rights to her child, D.S., Jr.  In one point she argues that there is
factually insufficient evidence to support the trial court=s finding that termination was in D.S.=s best interest.  We affirm.

Background Facts








Appellant is D.S.=s mother.  D.S. was two years
old at the time of trial. On June 4, 2003, Child Protective Services (CPS)
received a referral of neglectful supervision of D.S. by appellant; the
referral also showed that appellant was using crack cocaine.  On June 5, 2003, CPS removed D.S. from
appellant=s custody
and placed him in foster care after appellant admitted using drugs, but not in
D.S.=s presence.  CPS removed D.S.
because appellant had three other children in foster care, she was continuing
to use drugs, her recent drug tests were positive, and she had been arrested
for DWI while D.S. was in the car with her.








CPS had previously removed
appellant=s three
other children, J.W., S.A., and M.W., before D.S. was born, after an officer
had seen M.W. being held out of a window and suspected that appellant was using
drugs.  Appellant entered First Choice
Program, a program through Community Addiction Treatment Services (CATS), where
she stayed for thirteen months.  D.S. was
born during appellant=s stay at
First Choice, but he was not immediately removed from appellant=s care because he was born drug-free and appellant was cooperating and
not using drugs.  After being discharged,
appellant entered an after-care program where she began to test positive for
cocaine.  Initially, CPS was promoting
family reunification with J.W., S.A., and M.W.; however, after appellant began
to test positive, it pursued termination. 
Appellant=s parental
rights to J.W., S.A., and M.W. were terminated on September 3, 2003 for placing
the children in surroundings_and engaging in conduct_which
endangered the children. 

In June 2003, appellant
re-entered First Choice, but was discharged in August or September 2003 after
failing to complete the program.  She
failed to attend regular meetings, attending only ten out of the forty-eight
required meetings. 

In September or October 2003,
appellant entered Victory Outreach, which appellant initially described to CPS
as a rehabilitation program.  However,
CPS discovered that Victory Outreach did not offer drug programs and was more
like a shelter.  Appellant complained
that she could not complete the Victory Outreach program because of the time
deadlines on her case with CPS, because she was having transportation problems,
and because Victory Outreach would not let her complete the program the way she
wanted.  In June 2004, Kathleen Tucker, a
CPS caseworker, was informed that appellant was no longer at Victory Outreach
and did not officially complete the program.








In May 2004, after leaving
Victory Outreach, appellant told CPS that she was trying to get back into CATS
a second time.  Appellant attended five
out of the twenty-four group meetings and two out of the three individual
meetings she was required to attend.  In
July 2004, CPS contacted CATS and learned that appellant had not been regularly
attending the meetings and had been discharged.

Appellant often failed to
comply with CPS=s
requests.  CPS=s service plan required appellant to stay sober for six months, obtain
adequate housing, obtain employment, and complete a psychological exam.  On several occasions, she refused urine
analysis when requested by CPS.  Additionally,
she failed to provide CPS with pay stubs to show that she was working.  Further, the evidence shows that the only
part of the service plan that appellant successfully completed was the
psychological exam.

In addition, appellant and
D.S.=s father, Darrell S., claimed that they were separated, but CPS later
found out that they were living together. 
On September 28, 2004, Susan Marbitt, a CPS caseworker, arrived at
Darrell S.=s brother
and sister-in-law=s house
where appellant and Darrell S. were staying, and his sister-in-law would not
allow her to look through the house to see if it was adequate for D.S.  Appellant also failed to return some phone
calls to CPS. 

However, appellant made the
scheduled visitations with D.S. more often than not.  Out of the seventy-three available visits,
appellant made forty-two of them, but was late to eight visits.








The trial court terminated
appellant=s and
Darrell S.=s parental
rights on November 11, 2004.  The trial
court found, among other things, that it was in D.S.=s best interest to terminate the parent-child relationship.  Darrell S. is not  a party to this appeal.  

Statement of Points

The State contends that this
case should be dismissed because appellant failed to file a statement of
points.  See Tex. Fam. Code Ann. ' 263.405(b) (Vernon 2002). 
Family code section 263.405(b) states that A[n]ot later than the 15th day after the date a final order is signed
by the trial judge, a party intending to appeal the order must file with the
trial court a statement of the point or points on which the party intends to
appeal.  The statement may be combined
with a motion for a new trial.@  Id.  Historically, this court has held that the
failure to file a statement of points is not a defect that prevents this court
from addressing issues on appeal.[1]  








The State argues that the
newly added family code section 263.405(i)[2]
shows that the legislature has abrogated this court=s previous opinions holding otherwise. 
Section (i) states that 

[t]he
appellate court may not consider any issue that was not specifically presented
to the trial court in a timely filed statement of the points on which the party
intends to appeal or in a statement combined with a motion for new trial.  For purposes of this subsection, a claim that
a judicial decision is contrary to the evidence or that the evidence is
factually or legally insufficient is not sufficiently specific to preserve an
issue for appeal.[3]


 








But section 263.405(i)
applies only to an appeal that is filed on or after September 1, 2005.[4]  The enacting legislation specifically states
that A[a]n appeal of a final order . . . filed before the effective date [of
September 1, 2005] is governed by the law in effect on the date the appeal
was filed, and the former law is continued in effect for that purpose.@[5]  Here, the appeal was filed on
November 23, 2004, before the effective date of section 263.405(i); therefore,
this appeal is governed by our prior decisions construing the former version of
section 263.405, which do not preclude us from considering appellant=s point.  See, e.g., In re
S.J.G., 124 S.W.3d at 243.

Factual Sufficiency Standard of Review

In her sole point, appellant
argues that the evidence is factually insufficient to support the trial court=s finding that termination of the parent-child relationship between
appellant and D.S. is in D.S.=s best interest. 








A parent=s rights to Athe
companionship, care, custody, and management@ of his or her children are constitutional interests Afar more precious than any property right.@  Santosky v. Kramer, 455
U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982). 
AWhile parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to
recognize the constitutional underpinnings of the parent-child relationship, it
is also essential that emotional and physical interests of the child not be
sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d
17, 26 (Tex. 2002).  In a
termination case, the State seeks not just to limit parental rights but to end
them permanentlyCto divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right to inherit.  Tex. Fam. Code Ann. ' 161.206(b) (Vernon Supp. 2004-05); Holick v. Smith, 685 S.W.2d
18, 20 (Tex. 1985).  We strictly
scrutinize termination proceedings and strictly construe involuntary
termination statutes in favor of the parent. 
Holick, 685 S.W.2d at 20-21; In re D.T., 34 S.W.3d 625,
630 (Tex. App.CFort Worth
2000, pet. denied) (op. on reh=g).

In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the family
code, the petitioner must establish one or more of the acts or omissions
enumerated under subdivision (1) of the statute and must also prove that
termination is in the best interest of the child.  Tex.
Fam. Code Ann. ' 161.001
(Vernon 2002); Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate
v. Swate, 72 S.W.3d 763, 766 (Tex. App.CWaco 2002, pet. denied).  Both
elements must be established; termination may not be based solely on the best
interest of the child as determined by the trier of fact.  Tex. Dep=t of Human Servs. v. Boyd, 727 S.W.2d
531, 533 (Tex. 1987).








Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  Tex. Fam. Code Ann. '' 161.001, 161.206(a); In re G.M., 596 S.W.2d 846, 847 (Tex.
1980).  This intermediate standard falls
between the preponderance standard of ordinary civil proceedings and the
reasonable doubt standard of criminal proceedings.  G.M., 596 S.W.2d at 847; D.T.,
34 S.W.3d at 630.  It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. ' 101.007
(Vernon 2002).

The higher burden of proof in
termination cases alters the appellate standard of factual sufficiency
review.  In re C.H., 89 S.W.3d at
25; In re C.A.J., 122 S.W.3d 888, 892 (Tex. App._Fort
Worth 2003, no pet.).  A[A] finding that must be based on clear and convincing evidence cannot
be viewed on appeal the same as one that may be sustained on a mere
preponderance.@  In re C.H., 89 S.W.3d at 25.  In considering whether the evidence of
termination rises to the level of being clear and convincing, we must determine
Awhether the evidence is such that a factfinder could reasonably form a
firm belief or conviction@ that the
grounds for termination were proven.  Id.  Our inquiry here is whether, on the entire
record, a factfinder could reasonably form a firm conviction or belief that the
termination of the parent=s parental
rights would be in the best interest of the child.  Id. at 28; see also In re C.A.J.,
122 S.W.3d at 892.

Best Interest

Nonexclusive factors that the
trier of fact in a termination case may use in determining the best interest of
the child include 

(1)    the desires of the child,

 








(2)    the emotional and physical needs of the child
now and in the       future, 

 

(3)    the emotional and physical danger to the
child now and in the      future, 

 

(4)    the parental abilities of the individuals seeking custody, 

 

(5)    the programs available to assist these
individuals to promote        the best
interest of the child,

 

(6)    the plans for the child by these individuals
or by the agency         seeking custody, 

 

(7)    the stability of the home or proposed placement, 

 

(8)    the acts or omissions of the parent which
may indicate that         the existing
parent‑child relationship is not a proper one, and 

 

(9)    any excuse for the acts or
omissions of the parent. 








Holley v. Adams, 544 S.W.2d 367, 371‑72 (Tex. 1976); In re M.N.G., 147
S.W.3d 521, 539 (Tex. App._Fort Worth 2004, pet. denied). 
These factors are not exhaustive. 
Some listed factors may be inapplicable to some cases; other factors not
on the list may also be considered when appropriate.  In re C.H., 89 S.W.3d at 27; In re
M.N.G., 147 S.W.3d at 539. 
Furthermore, undisputed evidence of just one factor may be sufficient in
a particular case to support a finding that termination is in the best interest
of the child.     In re C.H., 89
S.W.3d at 27; In re M.N.G., 147 S.W.3d at 539.  On the other hand, the presence of scant
evidence relevant to each Holley factor will not support such a
finding.  In re C.H., 89 S.W.3d at
27; In re M.N.G., 147 S.W.3d at 539.

In addition to the above, a
parent=s inability to provide adequate care for the child, lack of parenting
skills, poor judgment, and repeated instances of immoral conduct may also be
considered when looking at the child=s best interest.  In re
C.A.J., 122 S.W.3d at 893.  We now
address those factors for which relevant evidence was admitted.  

The Emotional and Physical
Danger to the Child Now and in the Future

As part of appellant=s service plan, CPS wanted appellant to stop using drugs.  Appellant failed several drug tests, and as
recently as November 2004, refused to take a drug test when asked by CPS.  Appellant=s drug addiction clearly poses an emotional and physical danger to
D.S. now and in the future.  See
id.  In addition, appellant was
arrested for DWI while D.S. was in the car. 
Appellant admitted that she drank alcohol, then drove and picked up
D.S.  Laurie Smith, a CATS clinical supervisor,
testified that appellant did not appear to have a stable life and was not able
to get a job or obtain adequate housing without help from others.  Appellant=s unstable life threatens D.S.=s physical well-being and may put him at risk of injury.  See id. at 894.  

 








The
Plans for the Child by the Agency Seeking Custody_ The
Stability of the Home or Proposed Placement

 

Tammy Williams, D.S.=s maternal aunt, has expressed an interest in adopting D.S. and his
siblings J.W., S.A., and M.W.  Williams
lives in Arkansas. CPS initiated two home studies on Williams and learned that
Williams would need a lot of financial assistance for daycare and expenses if
she adopted the children.  At the time of
the home studies, Williams was already working two jobs.  Williams moved into a three bedroom house
from an apartment in hopes that the children would be placed with her.  At the time of trial, the adoptive placement
was still in the process of being approved by Arkansas officials.

D.S.=s foster parents have expressed an interest in adopting him if the
placement with Williams does not work out. 
D.S. has done well in foster care and was interacting well during family
visitation and with his sister M.W.

The
Acts or Omissions of the Parent Which May Indicate that the Existing
Parent-Child Relationship is Not a Proper One

 








Evidence of a parent=s long-term drug use and unstable lifestyle can support a factfinder=s conclusion that termination is in the child=s best interest.  Ross v.
Tex. Dep=t of
Protective & Regulatory Servs., No.
03-04-00569-CV, 2005 WL 366886, at *7 (Tex. App._Austin
Feb. 17, 2005, no pet.) (mem. op.).  A
parent=s inability to provide a stable home and remain gainfully employed,
failure to successfully complete drug treatment, and failure to comply with her
family service plan support a finding that termination is in the best interest
of the child.  Id.  

Appellant is an admitted
long-term drug user.  She has admitted to
CPS on several occasions that she is addicted to cocaine.  Appellant has also failed numerous drug
tests, including ones of which she had prior notice.  Appellant has failed to meet the service plan
requirements that she stay sober for six months, obtain adequate housing, and
obtain employment.  Appellant is
currently living with Darrell S. and his family, but she does not pay rent or
contribute to buying groceries.  Although
there is evidence that appellant is working at Taco Bell, she has not given CPS
her pay stubs to verify her employment. 
In addition, appellant was arrested for DWI when D.S. was in the car. 








Appellant argues that it is
in D.S.=s best interest to be placed with her because D.S. has bonded with
her; however, there is evidence that D.S. has also bonded well with his foster
parents, his health has improved since being placed in foster care, and he is
socializing well with his sister, M.W. 
Appellant claims that if she consistently attended and completed a drug
program, she could become a better parent to D.S., and she points out that she
did not fail a drug test after September 2003. 
But appellant has started drug treatment at least four times and never
successfully completed any program. Moreover, 
appellant refused to take any drug tests after September 2003; thus
there is no way of knowing whether she has been sober since October 2003 as she
claimed.  Lastly, appellant points out
that she never tested positive when she was at Victory Outreach.  But once again, appellant fails to mention
that Victory Outreach did not perform drug tests, and CPS did not consider it a
drug rehabilitation program.  Based upon
our review of the entire record, we conclude that a factfinder could have
reasonably formed a firm conviction or belief that termination of appellant=s rights was in D.S.=s best interest.  We hold that
the evidence is factually sufficient to support the trial court=s finding that termination is in D.S.=s best interest.  We overrule
appellant=s sole
point.

Conclusion

Having overruled appellant=s sole point, we affirm the trial court=s order.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL A:   LIVINGSTON, HOLMAN, and GARDNER, JJ.

 

DELIVERED:  October 6, 2005











[1]See
In re S.J.G., 124 S.W.3d 237, 243 (Tex. App._Fort Worth 2003, pet.
denied) (holding complete failure to file statement of points no bar to
appeal); In re W.J.H., 111 S.W.3d 707, 712 (Tex. App.CFort
Worth 2003, pet. denied) (holding failure to raise issue in statement of points
does not forfeit it on appeal); In re D.R.L.M., 84 S.W.3d 281, 291 (Tex.
App.CFort
Worth 2002, pet. denied) (holding failure to timely file statement of points
does not forfeit issues on appeal). 





[2]Act
of May 12, 2005, 79th Leg., R.S., ch. 176, _ 1,
2005 Tex. Sess. Law Serv. 332 (Vernon) (to be codified as an amendment of Tex. Fam. Code Ann. '
263.405).





[3]Id.





[4]Id.  





[5]Id.
(emphasis added).