COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-307-CV

IN THE INTEREST OF 

J.E.D., A CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant A.D. appeals the trial court’s judgment terminating her parental rights to her minor child, J.E.D.  In two points, she argues that the evidence is legally and factually insufficient to support a finding that the termination of her parental rights is in J.E.D.’s best interest.  We affirm.

Preservation of Error

As a preliminary matter, we address the State’s contention that A.D.’s statement of points does not comply with family code section 263.405(i).  Section 263.405(i) provides,

The appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial.  For purposes of this subsection, a claim that a judicial decision is contrary to the evidence or that the evidence is factually or legally insufficient is not sufficiently specific to preserve an issue for appeal.

Tex. Fam. Code Ann.
 § 263.405(i) (Vernon Supp. 2006)
.

In her statement of points, A.D. asserted, among other things, that

The evidence is legally insufficient to support the finding that termination of the parent-child relationship between [A.D.] and [J.E.D.] would be in the best interest of the child, as no reasonable trier of fact could form a firm belief or conviction that termination of the parent-child relationship between [A.D.] and the child would be in the best interest of the child.

The evidence is factually insufficient to support the finding that termination of the parent-child relationship between [A.D.] and [J.E.D.] would be in the best interest of the child, as a trier of fact could not reasonably form a firm belief or conviction that termination of the parent-child relationship between [A.D.] and the child would be in the best interest of the child.
 

Each of A.D.’s points complains of the legal and factual sufficiency, respectively, of the evidence to support a specific finding, i.e., the trial court’s best-interest finding.

We recently held that the following point statement preserved a sufficiency issue under section 263.405(i):

[T]he evidence is factually insufficient on his failure to establish his paternity (paragraphs 8.1 and 8.2 of the judgment), on grounds (D), (E), and (N) of section 161.001(a) of the Texas Family Code (paragraph 8, paragraph 8.3.1, paragraph 8.3.2, and paragraph 8.3.3 of the judgment), and on best interest (paragraph 8.4) of the judgment.

In re A.J.H.
, 205 S.W.3d 79, 80 (Tex. App.—Fort Worth 2006, no pet. h.).   A.D.’s statement of points is similar to the statement in 
A.J.H. 
 For the reasons we stated in
 A.J.H.
, we reject the State’s contentions.  
See id.
 at 80-81 (noting that termination statutes are to be construed strictly in favor of parents and citing 
House Comm. on Juvenile Justice and Family Issues, Bill Analysis
, Tex. H.B. 409, 79th Leg., R.S. (2005), which provides that if a party points out a mistake warranting a new trial, the trial court can immediately order a new trial, accomplishing the legislative policy of decreasing postjudgment delay in termination cases).
 

Standards of Review

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence.  
Tex. Fam. Code Ann
. §§ 161.001, 161.206(a) (Vernon Supp. 2006); 
In re J.F.C.
, 96 S.W.3d 256, 263 (Tex. 2002).  This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.  
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980); 
In re K.W.
, 138 S.W.3d 420, 425 (Tex. App.—Fort Worth 2004, pet. denied).  It is defined as the “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”  
Tex. Fam. Code Ann. 
§ 101.007 (Vernon 2002).

The higher burden of proof in termination cases elevates the appellate standard of legal sufficiency review.  
J.F.C.
, 96 S.W.3d at 265.  The traditional no-evidence standard does not adequately protect the parent’s constitutional interests.  
Id
.  In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction that the grounds for termination were proven.  
Id
. at 265-66.  We must review all the evidence in the light most favorable to the finding and judgment. 
 Id
. at 266.  This means that we must assume that the fact-finder resolved any disputed facts in favor of its finding if a reasonable fact-finder could have done so.  
Id.
  We must also disregard all evidence that a reasonable fact-finder could have disbelieved.  
Id
.  We must consider, however, undisputed evidence even if it is contrary to the finding.  
Id
.  That is, we must consider evidence favorable to termination if a reasonable fact-finder could, and we must disregard contrary evidence unless a reasonable fact-finder could not.  
City of Keller v. Wilson
, 168 S.W.3d 802, 827 (Tex. 2005).

This higher burden of proof also elevates the appellate standard of factual sufficiency review.  
In re C.H
., 89 S.W.3d 17, 25 (Tex. 2002).  “[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.”  
Id.
  In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction that the grounds for termination were proven.  
Id
.

The distinction between legal and factual sufficiency lies in how we review the evidence.  
J.F.C
., 96 S.W.3d at 266.  In a factual sufficiency review, in determining whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction that its finding was true, we must consider whether disputed evidence is such that a reasonable fact-finder could not have resolved it in favor of the finding.  
Id
.  If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient.  
Id
.

Evidence

When J.E.D. was born in October 2005, he tested positive for amphetamines, and A.D. tested positive for amphetamines and opiates.  J.E.D. was placed in the hospital’s NICU.  The hospital notified the Texas Department of Family and Protective Services (“the Department”), and Department investigator C.J. Netting interviewed A.D. at the hospital.  A.D. denied using drugs since 2000 and said she believed she had tested positive for amphetamine because she had been around people who were smoking methamphetamine a few days before J.E.D.’s birth.  But Paula Shockey, a counselor for the Tarrant Council on Alcoholism and Drug Abuse, testified that A.D. told her shortly after J.E.D.’s birth that she had used drugs on four of the prior thirty days.  In any event, Netting did not believe A.D.’s explanation and determined that removal was in J.E.D.’s best interest. 

The Department removed J.E.D. from A.D.’s custody and, after a brief stay in foster care, placed him with A.D.’s sister, T.C.  T.C. already had custody of two of A.D.’s four other children whom the Department had removed from A.D.’s custody; A.D.’s other children lived with other relatives.  T.C. testified that A.D. had used drugs since junior high school and continued to have drug problems through the time of trial, except for a time when her husband was in prison.  She said that A.D. and A.D.’s husband used drugs together when they still had custody of A.D.’s three oldest children.  A.D. visited J.E.D. in T.C.’s home only two or three times since he was placed with T.C.  T.C. testified that she does not believe anything A.D. tells her because she lies and tells people what she thinks they want to hear.  She did not believe that A.D. was sincere about making necessary changes in her life.  T.C. testified that termination of A.D.’s parental rights was in J.E.D.’s best interest and that she intended to adopt J.E.D. and raise him as her own child.  T.C. said that termination and adoption was appropriate for J.E.D. because, unlike his sisters who also lived with T.C., J.E.D. did not have an established bond with his mother.
  Initially, she did not favor the termination of A.D.’s parental rights, but she changed her mind when she saw that A.D. was not going to change. 

Paula Shockey testified that she referred A.D. to the Volunteers of America rehabilitation program shortly after J.E.D.’s birth.  A.D. completed the initial VOA application but did not enter the program even though VOA had a bed available for her. 

 Christine Patrone, a Department caseworker, was assigned to J.E.D.’s case from December 2005 until April 2006.  She testified that A.D. did not contact her until March 23, 2006.  Patrone visited J.E.D. in T.C.’s home and found he was doing very well there. 

Tahirah Samuels, another Department caseworker, received J.E.D.’s case from Patrone.  She testified that A.D. did not begin working her service plan until July 6, 2006—less than a month before trial and more than ten months after the case was opened.  Also on July 6, Samuels told A.D. that she needed to submit to a hair-follicle drug test, but A.D. told her that the test would “come up dirty” or positive for drug use within the last thirty days.  Samuels testified that it was in J.E.D.’s best interest to terminate A.D.’s parental rights, but she later testified that it would be in his best interest to remain in T.C.’s home and that A.D.’s rights should not be terminated. 

At the time of trial, A.D. was on deferred adjudication community supervision for possession of a controlled substance.  She testified that she last used drugs on June 28, 2006, about a month before trial, but that she had been clean for six months before that.  A.D. said that her June 28 drug use was “when [she] was trying to get into some type of a program trying to get my kids back.”  She was involved in a “Supportive Outpatient” drug rehabilitation program from January 2006 through June 28, and she began another outpatient rehab program the week before trial.  At the time of trial, she was living with her grandmother and working as a casual caretaker for other residents in her grandmother’s apartments.  A.D. said that she was seeking admission to the University of Texas at Arlington.  She testified that it was in J.E.D.’s best interest to continue to live with T.C., but she opposed termination of her parental rights. 

The trial court found by clear and convincing evidence that A.D. knowingly placed or knowingly allowed J.E.D. to remain in conditions or surroundings which endanger his physical or emotional well-being, engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered his physical or emotional well-being, and constructively abandoned J.E.D. and that termination of A.D.’s parental rights was in J.E.D.’s best interest.  The trial court terminated A.D.’s parental rights, and A.D. filed this appeal.  We note that A.D. challenges only the legal and factual sufficiency of the evidence to support the trial court’s “best interest” finding and not its other findings.

Best Interest

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child under subdivision (2).  
Tex. Fam. Code Ann. 
§ 161.001(1), (2); 
Richardson v. Green
, 677 S.W.2d 497, 499 (Tex. 1984); 
Swate v. Swate
, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).

Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include 

(1) the desires of the child,

(2) the emotional and physical needs of the child now and in the future, 

(3) the emotional and physical danger to the child now and in the future, 

(4) the parental abilities of the individuals seeking custody, 

(5) the programs available to assist these individuals to promote the best interest of the child,

(6) the plans for the child by these individuals or by the agency seeking custody, 

(7) the stability of the home or proposed placement, 

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and 

(9) any excuse for the acts or omissions of the parent. 

Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976); 
In re M.N.G., 
147 S.W.3d 521, 539 (Tex. App.སྭFort Worth 2004, pet. denied).  These factors are not exhaustive.  Some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.  
C.H
., 89 S.W.3d at 27; 
M.N.G.
, 147 S.W.3d at 539.  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.  
C.H
., 89 S.W.3d at 27; 
M.N.G.
, 147 S.W.3d at 539.  On the other hand, the presence of scant evidence relevant to each 
Holley
 factor will not support such a finding.  
C.H
., 89 S.W.3d at 27; 
M.N.G.
, 147 S.W.3d at 539.

In addition to the above, a parent’s inability to provide adequate care for the child, lack of parenting skills, poor judgment, and repeated instances of immoral conduct may also be considered when looking at the child’s best interest.  
In re C.A.J.
, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.).  We now address those factors for which relevant evidence was admitted.

By her own admission, A.D. is a long-time drug user and used drugs after J.E.D.’s birth and as recently as a month before trial.  Her drug use is evidence of an emotional and physical danger to 
J.E.D. now and in the future and of repeated instances of immoral conduct on A.D.’s part.  T.C. testified that A.D. and her husband used drugs when caring for A.D.’s three oldest children, which is evidence of a lack of parental abilities.  By contrast, T.C. and her husband were raising their own three children and three of A.D.’s, and J.E.D. was doing “very well” in T.C.’s household, which is evidence of T.C.’s parental abilities and also of the stability of the State’s proposed placement.  T.C. planned to adopt J.E.D. and raise him as her own child.  Finally, while there were programs available to A.D. to beat her drug addiction and improve her parental skills, the record shows that she did not avail herself of those programs until a few weeks before trial.  Even A.D. agreed that it was in J.E.D.’s best interest to continue living with T.C.

Viewing the evidence in the light most favorable to the trial court’s judgment, we hold that 
a fact-finder could reasonably form a firm belief or conviction that termination of A.D.’s parental rights was in J.E.D.’s best interest; thus, the evidence was legally sufficient.  Viewing the entire record, we hold that the evidence was also factually sufficient.  We therefore overrule both of A.D.’s points.

Conclusion

Having overruled both of A.D.’s points, we affirm the trial court’s order terminating A.D.’s parental rights to J.E.D.  
See
 
Tex. R. App. P.
 43.2.

ANNE GARDNER

JUSTICE

PANEL F: CAYCE, C.J.; GARDNER and MCCOY, JJ.

CAYCE, C.J., concurs without opinion.

DELIVERED:  March 8, 2007

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.