COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-06-307-CV

 

 

IN THE INTEREST OF 

 

 

J.E.D., A CHILD



 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant A.D. appeals the
trial court=s judgment
terminating her parental rights to her minor child, J.E.D.  In two points, she argues that the evidence
is legally and factually insufficient to support a finding that the termination
of her parental rights is in J.E.D.=s best interest.  We affirm.

 

 








                                       Preservation of Error

As a preliminary matter, we
address the State=s contention
that A.D.=s statement
of points does not comply with family code section 263.405(i).  Section 263.405(i) provides,

The appellate court may not consider any issue
that was not specifically presented to the trial court in a timely filed
statement of the points on which the party intends to appeal or in a statement
combined with a motion for new trial. 
For purposes of this subsection, a claim that a judicial decision is
contrary to the evidence or that the evidence is factually or legally
insufficient is not sufficiently specific to preserve an issue for appeal.

 

Tex. Fam. Code Ann. ' 263.405(i)
(Vernon Supp. 2006).

In her statement of points,
A.D. asserted, among other things, that

The
evidence is legally insufficient to support the finding that termination of the
parent-child relationship between [A.D.] and [J.E.D.] would be in the best
interest of the child, as no reasonable trier of fact could form a firm belief
or conviction that termination of the parent-child relationship between [A.D.]
and the child would be in the best interest of the child.

 

The
evidence is factually insufficient to support the finding that termination of
the parent-child relationship between [A.D.] and [J.E.D.] would be in the best
interest of the child, as a trier of fact could not reasonably form a firm
belief or conviction that termination of the parent-child relationship between
[A.D.] and the child would be in the best interest of the child. 

 

Each of A.D.=s points complains of the legal and factual sufficiency, respectively,
of the evidence to support a specific finding, i.e., the trial court=s best-interest finding.








We recently held that the
following point statement preserved a sufficiency issue under section
263.405(i):

[T]he
evidence is factually insufficient on his failure to establish his paternity
(paragraphs 8.1 and 8.2 of the judgment), on grounds (D), (E), and (N) of
section 161.001(a) of the Texas Family Code (paragraph 8, paragraph 8.3.1,
paragraph 8.3.2, and paragraph 8.3.3 of the judgment), and on best interest
(paragraph 8.4) of the judgment.

 

In re A.J.H., 205 S.W.3d 79, 80 (Tex. App.CFort Worth 2006, no pet. h.).  
A.D.=s statement
of points is similar to the statement in A.J.H.  For the reasons we stated in A.J.H., we
reject the State=s
contentions.  See id. at 80-81
(noting that termination statutes are to be construed strictly in favor of
parents and citing House Comm. on
Juvenile Justice and Family Issues, Bill Analysis, Tex. H.B. 409, 79th
Leg., R.S. (2005), which provides that if a party points out a mistake
warranting a new trial, the trial court can immediately order a new trial,
accomplishing the legislative policy of decreasing postjudgment delay in
termination cases). 

                                      Standards of Review








Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing evidence.  Tex.
Fam. Code Ann. '' 161.001,
161.206(a) (Vernon Supp. 2006); In re J.F.C., 96 S.W.3d 256, 263 (Tex.
2002).  This intermediate standard falls
between the preponderance standard of ordinary civil proceedings and the
reasonable doubt standard of criminal proceedings.  In re G.M., 596 S.W.2d 846, 847 (Tex.
1980); In re K.W., 138 S.W.3d 420, 425 (Tex. App.CFort Worth 2004, pet. denied). 
It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. ' 101.007
(Vernon 2002).








The higher burden of proof in
termination cases elevates the appellate standard of legal sufficiency
review.  J.F.C., 96 S.W.3d at
265.  The traditional no‑evidence
standard does not adequately protect the parent=s constitutional interests.  Id.  In reviewing the evidence for legal
sufficiency in parental termination cases, we must determine whether the
evidence is such that a fact-finder could reasonably form a firm belief or
conviction that the grounds for termination were proven.  Id. at 265‑66.  We must review all the evidence in the light
most favorable to the finding and judgment.  Id. at 266.  This means that we must assume that the
fact-finder resolved any disputed facts in favor of its finding if a reasonable
fact-finder could have done so.  Id.  We must also disregard all evidence that a
reasonable fact-finder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable fact-finder could, and we must disregard contrary evidence unless a
reasonable fact-finder could not.  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

This higher burden of proof
also elevates the appellate standard of factual sufficiency review.  In re C.H., 89 S.W.3d 17, 25 (Tex.
2002).  A[A] finding that must be based on clear and convincing evidence cannot
be viewed on appeal the same as one that may be sustained on a mere
preponderance.@  Id. 
In considering whether the evidence of termination rises to the level of
being clear and convincing, we must determine whether the evidence is such that
a fact-finder could reasonably form a firm belief or conviction that the
grounds for termination were proven.  Id.








The distinction between legal
and factual sufficiency lies in how we review the evidence.  J.F.C., 96 S.W.3d at 266.  In a factual sufficiency review, in
determining whether the evidence is such that a fact-finder could reasonably
form a firm belief or conviction that its finding was true, we must consider
whether disputed evidence is such that a reasonable fact-finder could not have
resolved it in favor of the finding.  Id.  If, in light of the entire record, the
disputed evidence that a reasonable fact-finder could not have credited in
favor of the finding is so significant that a fact-finder could not reasonably
have formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.  Id.

                                              Evidence

When J.E.D. was born in
October 2005, he tested positive for amphetamines, and A.D. tested positive for
amphetamines and opiates.  J.E.D. was
placed in the hospital=s NICU.  The hospital notified the Texas Department of
Family and Protective Services (Athe Department@), and
Department investigator C.J. Netting interviewed A.D. at the hospital.  A.D. denied using drugs since 2000 and said
she believed she had tested positive for amphetamine because she had been
around people who were smoking methamphetamine a few days before J.E.D.=s birth.  But Paula Shockey, a
counselor for the Tarrant Council on Alcoholism and Drug Abuse, testified that
A.D. told her shortly after J.E.D.=s birth that she had used drugs on four of the prior thirty days.  In any event, Netting did not believe A.D.=s explanation and determined that removal was in J.E.D.=s best interest. 








The Department removed J.E.D.
from A.D.=s custody
and, after a brief stay in foster care, placed him with A.D.=s sister, T.C.  T.C. already had
custody of two of A.D.=s four other
children whom the Department had removed from A.D.=s custody; A.D.=s other
children lived with other relatives. 
T.C. testified that A.D. had used drugs since junior high school and
continued to have drug problems through the time of trial, except for a time
when her husband was in prison.  She said
that A.D. and A.D.=s husband
used drugs together when they still had custody of A.D.=s three oldest children.  A.D.
visited J.E.D. in T.C.=s home only
two or three times since he was placed with T.C.  T.C. testified that she does not believe
anything A.D. tells her because she lies and tells people what she thinks they
want to hear.  She did not believe that
A.D. was sincere about making necessary changes in her life.  T.C. testified that termination of A.D.=s parental rights was in J.E.D.=s best interest and that she intended to adopt J.E.D. and raise him as
her own child.  T.C. said that termination
and adoption was appropriate for J.E.D. because, unlike his sisters who also
lived with T.C., J.E.D. did not have an established bond with his mother.  Initially, she did not favor the termination
of A.D.=s parental rights, but she changed her mind when she saw that A.D. was
not going to change. 

Paula Shockey testified that
she referred A.D. to the Volunteers of America rehabilitation program shortly
after J.E.D.=s birth.  A.D. completed the initial VOA application but
did not enter the program even though VOA had a bed available for her. 








 Christine Patrone, a Department caseworker,
was assigned to J.E.D.=s case from
December 2005 until April 2006.  She
testified that A.D. did not contact her until March 23, 2006.  Patrone visited J.E.D. in T.C.=s home and found he was doing very well there. 

Tahirah Samuels, another
Department caseworker, received J.E.D.=s case from Patrone.  She
testified that A.D. did not begin working her service plan until July 6, 2006Cless than a month before trial and more than ten months after the case
was opened.  Also on July 6, Samuels told
A.D. that she needed to submit to a hair-follicle drug test, but A.D. told her
that the test would Acome up
dirty@ or positive for drug use within the last thirty days.  Samuels testified that it was in J.E.D.=s best interest to terminate A.D.=s parental rights, but she later testified that it would be in his
best interest to remain in T.C.=s home and that A.D.=s rights should not be terminated. 








At the time of trial, A.D.
was on deferred adjudication community supervision for possession of a
controlled substance.  She testified that
she last used drugs on June 28, 2006, about a month before trial, but that she
had been clean for six months before that. 
A.D. said that her June 28 drug use was Awhen [she] was trying to get into some type of a program trying to get
my kids back.@  She was involved in a ASupportive Outpatient@ drug rehabilitation program from January 2006 through June 28, and
she began another outpatient rehab program the week before trial.  At the time of trial, she was living with her
grandmother and working as a casual caretaker for other residents in her
grandmother=s
apartments.  A.D. said that she was
seeking admission to the University of Texas at Arlington.  She testified that it was in J.E.D.=s best interest to continue to live with T.C., but she opposed
termination of her parental rights. 

The trial court found by
clear and convincing evidence that A.D. knowingly placed or knowingly allowed
J.E.D. to remain in conditions or surroundings which endanger his physical or
emotional well-being, engaged in conduct or knowingly placed the child with
persons who engaged in conduct that endangered his physical or emotional
well-being, and constructively abandoned J.E.D. and that termination of A.D.=s parental rights was in J.E.D.=s best interest.  The trial
court terminated A.D.=s parental
rights, and A.D. filed this appeal.  We
note that A.D. challenges only the legal and factual sufficiency of the
evidence to support the trial court=s Abest
interest@ finding and not its other findings.

                                            Best Interest








In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the family
code, the petitioner must establish one or more of the acts or omissions
enumerated under subdivision (1) of the statute and must also prove that
termination is in the best interest of the child under subdivision (2).  Tex.
Fam. Code Ann. ' 161.001(1),
(2); Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate v.
Swate, 72 S.W.3d 763, 766 (Tex. App.CWaco 2002, pet. denied).

Nonexclusive factors that the
trier of fact in a termination case may use in determining the best interest of
the child include 

(1)    the desires of the child,

 

(2)    the emotional and physical needs of the
child now and in the       future, 

 

(3)    the emotional and physical danger to the
child now and in the     future, 

 

(4)    the parental abilities of the individuals seeking custody, 

 

(5)    the programs available to assist these
individuals to promote       the best
interest of the child,

 

(6)    the plans for the child by these individuals
or by the agency        seeking custody, 

 

(7)    the stability of the home or proposed placement, 

 

(8)    the acts or omissions of the parent which
may indicate that        the existing
parent‑child relationship is not a proper one, and 

 

(9)    any excuse for the acts or
omissions of the parent. 








Holley v. Adams, 544 S.W.2d 367, 371‑72 (Tex. 1976); In re M.N.G., 147 S.W.3d
521, 539 (Tex. App._Fort Worth 2004, pet. denied). 
These factors are not exhaustive. 
Some listed factors may be inapplicable to some cases; other factors not
on the list may also be considered when appropriate.  C.H., 89 S.W.3d at 27; M.N.G.,
147 S.W.3d at 539.  Furthermore,
undisputed evidence of just one factor may be sufficient in a particular case
to support a finding that termination is in the best interest of the child.  C.H., 89 S.W.3d at 27; M.N.G.,
147 S.W.3d at 539.  On the other hand,
the presence of scant evidence relevant to each Holley factor will not
support such a finding.  C.H., 89
S.W.3d at 27; M.N.G., 147 S.W.3d at 539.

In addition to the above, a
parent=s inability to provide adequate care for the child, lack of parenting
skills, poor judgment, and repeated instances of immoral conduct may also be
considered when looking at the child=s best interest.  In re
C.A.J., 122 S.W.3d 888, 893 (Tex. App.CFort Worth 2003, no pet.).  We
now address those factors for which relevant evidence was admitted.








By her own admission, A.D. is
a long-time drug user and used drugs after J.E.D.=s birth and as recently as a month before trial.  Her drug use is evidence of an emotional and
physical danger to J.E.D. now and in the future and of repeated instances of
immoral conduct on A.D.=s part.  T.C. testified that A.D. and her husband used
drugs when caring for A.D.=s three oldest children, which is evidence of a lack of parental
abilities.  By contrast, T.C. and her
husband were raising their own three children and three of A.D.=s, and J.E.D. was doing Avery well@ in T.C.=s household, which is evidence of T.C.=s parental abilities and also of the stability of the State=s proposed placement.  T.C.
planned to adopt J.E.D. and raise him as her own child.  Finally, while there were programs available
to A.D. to beat her drug addiction and improve her parental skills, the record
shows that she did not avail herself of those programs until a few weeks before
trial.  Even A.D. agreed that it was in
J.E.D.=s best interest to continue living with T.C.

Viewing the evidence in the
light most favorable to the trial court=s judgment, we hold that a fact-finder could reasonably form a firm belief
or conviction that termination of A.D.=s parental rights was in J.E.D.=s best interest; thus, the evidence was legally sufficient.  Viewing the entire record, we hold that the
evidence was also factually sufficient. 
We therefore overrule both of A.D.=s points.

                                             Conclusion

Having overruled both of A.D.=s points, we affirm the trial court=s order terminating A.D.=s parental rights to J.E.D.  See
Tex. R. App. P. 43.2.

 

 

ANNE GARDNER

JUSTICE

 

PANEL F:    CAYCE, C.J.; GARDNER and MCCOY, JJ.

 

CAYCE,
C.J., concurs without opinion.

 

DELIVERED:  March 8, 2007











[1]See Tex. R. App. P. 47.4.