COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-129-CV

 

 

IN THE INTEREST OF                                                                            

 

 

H.G., A CHILD                                                                                    

 

                                              ------------

 

           FROM
THE 322ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellant Natasha C., the
biological mother of four-year-old H.G., filed a notice of appeal contesting
the trial court=s order
terminating her parental rights.  In five
issues, appellant contends (1) that the evidence was factually insufficient to
support the jury=s best
interest finding, (2) that the evidence was factually insufficient to support
the jury=s section 161.001(1)(D) 
endangerment finding, (3) that the evidence was factually insufficient
to support the jury=s section
161.001(1)(E) endangerment finding, (4) that the evidence was factually
insufficient to show that appellant constructively abandoned H.G., and (5) that
section 263.405(i) is not a bar to appellant=s sufficiency complaints.  Tex. Fam. Code Ann. ' 161.001(1)(D), (E) (Vernon Supp. 2006).  Because we hold that the evidence was
factually sufficient to support the jury=s best interest and section 161.001(1)(E) endangerment findings, we
affirm.

II.  Factual Background

Child Protective Services (ACPS@)
investigator Lisa Lambert arrived at appellant=s apartment on September 18, 2004, and Brandon C., H.G.=s stepfather, answered the door. 
Brandon had a black eye, dark bruises, a bloody ear, facial cuts, and a
neck wound allegedly caused by appellant=s use of brass knuckles.  When
Lambert asked H.G. what happened, she said that AMommy did it.@  Additionally, appellant admitted that she hit
Brandon because she was upset that he had not cleaned up the apartment or put
the children to bed when she came home. 
Because of this investigation, CPS removed H.G. and C.G., H.G.=s ten-month-old brother, from appellant=s home.  








Dr. Rhonda Polakoff, a
psychologist, evaluated H.G. immediately and determined that H.G. had symptoms
consistent with a child who has difficulty coping.  Dr. Polakoff diagnosed H.G. with a depressive
disorder, an adjustment disorder, and with a post-traumatic stress
disorder.  Sheila Nash, H.G.=s foster parent, caught four-year-old H.G. masturbating on several
occasions.  When Nash asked H.G. why she
did it, H.G. said that ADaddy@ Brandon showed her how to make her Acookies@ feel
better.

In addition to engaging in
domestic violence, appellant had mental disorders and a history of drug dealing
and usage.  Also, prior to the
termination trial, appellant missed twenty-four out of forty-four visits with
H.G. and failed to complete the drug testing portion of her CPS service plan. 

III.  Statement of Points

Because appellant=s fifth issue is potentially dispositive, we address it first.  Appellant asserts that section 263.405(i) of
the Texas Family Code is not a bar to her other four complaints because (1) she
complied with it, (2) to the extent she did not comply with it, the court
should excuse compliance under rule 2 of the Texas Rules of Appellate
Procedure, and (3) section 263.405(i) constitutes a violation of the
separations of powers provision of the Texas Constitution.  

Section 263.405(i) of the
Texas Family Code provides,








The appellate court may not consider any issue
that was not specifically presented to the trial court in a timely filed
statement of the points on which the party intends to appeal or in a statement
combined with a motion for new trial. 
For purposes of this subsection, a claim that a judicial decision is
contrary to the evidence or that the evidence is factually or legally
insufficient is not sufficiently specific to preserve an issue for appeal.[2]

 

The State does not contend that appellant failed
to preserve her complaints.   We agree
with both parties that appellant sufficiently pled and timely filed the
statements of points for new trial. 
See Tex. Fam. Code Ann.
' 263.405(i).  Accordingly, we
sustain appellant=s fifth
issue.  We do not address the other two
subissues because appellant complied with section 263.405(i). 

IV. Endangerment,
Abandonment, and Best Interest of the Children

A.  Endangerment and Abandonment Findings

In her second and third
issues, appellant argues that the evidence is factually insufficient to support
the jury=s findings that she (1) engaged in conduct that endangered H.G.=s physical or emotional well-being and (2) knowingly placed or
knowingly allowed H.G. to remain in conditions which endangered her physical or
emotional well-being.  In her fourth
issue, appellant claims that the evidence is factually insufficient to support
the jury=s finding that she constructively abandoned H.G.








A parent=s rights to Athe
companionship, care, custody, and management@ of his or her children are constitutional interests Afar more precious than any property right.@  Santosky v. Kramer, 455
U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982). 
AWhile parental rights are of constitutional magnitude, they are not
absolute.  Just as it is imperative for
courts to recognize the constitutional underpinnings of the parent-child
relationship, it is also essential that emotional and physical interests of the
child not be sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d
17, 26 (Tex. 2002).  In a termination case,
the State seeks not just to limit parental rights but to end them permanentlyCto divest the parent and child of all legal rights, privileges,
duties, and powers normally existing between them, except for the child=s right to inherit.  Tex. Fam. Code Ann. ' 161.206(b); Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).
 We strictly scrutinize termination
proceedings and strictly construe involuntary termination statutes in favor of
the parent.  Holick, 685 S.W.2d at
20-21; In re D.T., 34 S.W.3d 625, 630 (Tex. App.CFort Worth 2000, pet. denied) (op. on reh=g).








In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the family
code, the petitioner must establish one or more of the acts or omissions
enumerated under subdivision (1) of the statute and must also prove that
termination is in the best interest of the child under subdivision (2).  Tex.
Fam. Code Ann. ' 161.001(1),
(2); Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate v.
Swate, 72 S.W.3d 763, 766 (Tex. App.CWaco 2002, pet. denied).  Both
elements must be established; termination may not be based solely on the best
interest of the child as determined by the trier of fact.  Tex. Dep=t of Human Servs. v. Boyd, 727 S.W.2d
531, 533 (Tex. 1987).

Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
also requires the petitioner to justify termination by clear and convincing
evidence.  Tex. Fam. Code Ann. '' 161.001, 161.206(a); In re G.M., 596 S.W.2d 846, 847 (Tex.
1980).  This intermediate standard falls
between the preponderance standard of ordinary civil proceedings and the
reasonable doubt standard of criminal proceedings.  G.M., 596 S.W.2d at 847; D.T.,
34 S.W.3d at 630.  It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. ' 101.007
(Vernon 2002).  

                1.  Factual Sufficiency Standard of Review 








The higher burden of proof in
termination cases alters the appellate standard of factual sufficiency
review.  C.H., 89 S.W.3d at
25.  A[A] finding that must be based on clear and convincing evidence cannot
be viewed on appeal the same as one that may be sustained on a mere
preponderance.@  Id. 
In considering whether the evidence of termination rises to the level of
being clear and convincing, we must determine Awhether the evidence is such that a factfinder could reasonably form a
firm belief or conviction@ that the
grounds for termination were proven.  Id.  Our inquiry here is whether, on the entire
record, a factfinder could reasonably form a firm conviction or belief that the
parent violated one of the conduct provisions of section 161.001(1) and that
the termination of the parent=s parental rights would be in the best interest of the child.  Id. at 28. 

                                            2.  Analysis








At trial, Lambert, the CPS
investigator, testified that she received a call about H.G. on September 18,
2004.  The caller alleged that appellant
and Brandon engaged in violent physical altercations in front of the
child.  When Lambert arrived at Brandon
and appellant=s apartment,
Brandon answered the door.  Initially,
Brandon denied his identity, but when Lambert confronted him about the work
apron he was wearing that still had his nametag attached, Brandon admitted to
his identity.  Lambert testified that
Brandon had a Abeat up@ face, a black eye, dark bruises, a bloody ear, and lots of cuts.  Lambert also testified that she had received
a report that appellant hit Brandon with brass knuckles.  In addition to Brandon=s facial injuries, there was a bruise on his neck consistent with an
injury caused by such a weapon.  In
Lambert=s opinion, the injuries had all just recently been inflicted.

After speaking with Brandon,
Lambert entered the home and spoke with H.G. 
H.G. told her that AMommy did it, and Mommy hurt Daddy Brandon, and Mommy was mad.@  When Lambert spoke with
appellant, appellant admitted that she hit Brandon because she was upset that
he had not cleaned up the apartment or put the children to bed.  Because of this investigation, CPS ultimately
removed H.G. and C.G. for domestic violence concerns.  While in Lambert=s custody, H.G. threw a Atemper tantrum times ten,@ and acted abusive towards C.G.

Appellant=s mother, Vivian Mayo-Martin, opined that H.G. often witnessed violent
physical altercations between appellant and Brandon.  Vivian testified that during these
altercations, Brandon used ten-month-old C.G. as a shield from appellant=s blows.  Whenever appellant called,
Vivian would immediately pick up H.G. and C.G. because she did not want them to
observe appellant=s violence.








Vicki Olstien, Brandon=s aunt, also testified about appellant=s violent tendencies.  Olstien
testified that appellant and Brandon lived with her for around two months after
Brandon had been shot in October of 2005. 
Olstien stated that on one occasion, she heard Brandon yelling for help
in his bedroom.  When Olstien=s son broke down the door, Olstien saw appellant biting Brandon=s finger and kicking him repeatedly. 
After Olstien broke up the fight, appellant and Brandon said that Athey were on a three-day down cycle from doing some speed.@  Then later, when Olstien tried
to break up another fight between appellant and Brandon, appellant bit Olstien=s finger and wrestled with her on the floor.  Appellant also used a piece of wood from the
bed to hit Olstien=s husband in
the shoulder.  Ultimately, Olstien called
the police because appellant and Brandon refused to leave; the police arrived
shortly thereafter and arrested appellant.

At the trial termination,
appellant maintained that neither H.G. nor C.G. had seen her hit Brandon.  However, she believed that slapping men was Anot a big deal@ and
admitted that H.G. had seen her slap Brandon two or three times.  Appellant testified that whenever H.G. saw
her slap Brandon, H.G. asked her to stop hitting and hurting her daddy.








Dr. Polakoff evaluated H.G.
in October 2004, and determined that H.G. had extreme tantrums, was aggressive,
and would self-mutilate, all symptoms consistent with a child who has
difficulty coping.  Dr. Polakoff
diagnosed H.G. with an adjustment disorder, a depressive disorder, and with a
post-traumatic stress disorder.  Nash,
H.G.=s foster parent, agreed with Dr. Polakoff=s assessment and testified that H.G. would often bang her head against
the wall, slap herself in the face, pull out her hair, and bite herself.  Nash noted that the slightest thing could
send H.G. into a rage, including someone placing a napkin on her the wrong
way.  

Nash also testified that H.G.
would act out sexually.  Specifically, on
the first day that Nash brought H.G. home, H.G. masturbated to orgasm while
sitting in the car seat.  On another
occasion, according to Nash, H.G. said that Brandon showed her how to make her Acookies@ feel
better.  On a third occasion, H.G. told
Nash that Brandon would stick an object in her Acookies@ and make it
feel better, and she wished that Nash would do so. 

In addition to allowing H.G.
to experience both domestic and sexual abuse, appellant also has a history of
drug dealing and drug use.  First,
appellant admitted that she sold methamphetamine to support herself and her
children.  Appellant also testified that
she used marijuana periodically starting at age fourteen and would often smoke
on the back porch while the children were in bed.  In September 2004, the same month that CPS
removed her children, appellant tested positive for marijuana.  








Based on our review of the
entire record, we conclude that a factfinder could reasonably form a firm
belief or conviction that appellant engaged in conduct that endangered the
physical or emotional well-being of H.G., and therefore, we hold that the
evidence is factually sufficient to support the jury=s finding.  See Tex. Fam. Code Ann. ' 161.001(1)(E); In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002); C.H.,
89 S.W.3d at 28.  Accordingly, we
overrule appellant=s third
issue.

Because a petitioner need
establish only one of the acts or omissions enumerated under subdivision (1) of
section 161.001, we need not address appellant=s second issueCwhether the
evidence is factually sufficient to support the jury=s 161.001(1)(D) findingCor appellant=s fourth
issueCwhether the evidence was factually sufficient to support the jury=s finding that appellant constructively abandoned H.G.  See Tex.
Fam. Code Ann. _ 161.001(1)(D), (N); In re A.J.L., 136 S.W.3d 293, 305 (Tex.
App.CFort Worth 2004, no pet.); In re S.F., 32 S.W.3d 318, 320 (Tex.
App.CSan Antonio 2000, no pet.). 
Accordingly, we overrule appellant=s second and fourth issues.

We will next consider whether
the jury=s finding that termination of appellant=s parental rights was in H.G.=s best interest was factually insufficient as appellant claims in her
first issue.  See Tex. Fam. Code Ann. ' 161.001(2).

B.  Appellant=s Best-Interest Claim

Nonexclusive factors that the
trier of fact in a termination case may use in determining the best interest of
the child include 

(1)    the desires of the child,

 








(2)    the emotional and physical needs of the
child now and in the       future, 

 

(3)    the emotional and physical danger to the
child now and in the     future, 

 

(4)    the parental abilities of the individuals seeking custody, 

 

(5)    the programs available to assist these
individuals to promote       the best
interest of the child,

 

(6)    the plans for the child by these individuals
or by the agency        seeking custody, 

 

(7)    the stability of the home or proposed placement, 

 

(8)    the acts or omissions of the parent which
may indicate that        the existing
parent‑child relationship is not a proper one, and 

 

(9)    any excuse for the acts or
omissions of the parent. 








Holley v. Adams, 544 S.W.2d 367, 371‑72 (Tex. 1976); In re M.N.G., 147
S.W.3d 521, 539 (Tex. App._Fort Worth 2004, pet. denied). 
These factors are not exhaustive. 
Some listed factors may be inapplicable to some cases; other factors not
on the list may also be considered when appropriate.  C.H., 89 S.W.3d at 27; M.N.G.,
147 S.W.3d at 539.  Furthermore,
undisputed evidence of just one factor may be sufficient in a particular case
to support a finding that termination is in the best interest of the
child.  C.H., 89 S.W.3d at 27; M.N.G.,
147 S.W.3d at 539.  On the other hand,
the presence of scant evidence relevant to each Holley factor will not
support such a finding.  C.H., 89
S.W.3d at 27; M.N.G., 147 S.W.3d at 539.

In addition to the above, a
parent=s inability to provide adequate care for the child, lack of parenting
skills, poor judgment, and repeated instances of immoral conduct may also be
considered when looking at the child=s best interest.  In re
C.A.J., 122 S.W.3d 888, 893 (Tex. App.CFort Worth 2003, no pet.).  We
now address those factors for which relevant evidence was admitted.  

1.  The Emotional and Physical Danger to H.G. Now
and in the Future

 

Appellant, H.G., and Vivian
all testified that H.G. was present when appellant attacked Brandon.  Further, although H.G. was not present during
all of the altercations between Brandon and appellant, there is evidence that
H.G.=s self-mutilation and tantrums resulted from living with
appellant.  Appellant admitted to not
getting along with people, she bit and wrestled with Olstien, and she hit
Olstien=s husband in the shoulder with a piece of wood.  Appellant=s violent tendencies clearly pose a physical danger to H.G. now and in
the future.  See Holley, 544
S.W.2d at 371‑72.  Additionally,
by slapping Brandon at least two times in front of H.G. and by inflicting cuts,
bruises, a black eye, a bloody ear, and a possible brass knuckle bruise on
Brandon while H.G. was home, appellant placed H.G. in emotional danger.  See id.








The evidence at trial also
showed that appellant had sold methamphetamine, had cared for the children
while using marijuana, and failed to maintain steady employment or
housing.  Further, Vivian testified that
Brandon would use H.G.=s
ten-month-old brother as a shield when appellant attacked him.  Brandon also allegedly sexually abused H.G.
by teaching her how to make her Acookies@ feel
better.

Additionally, appellant
testified that she had multiple personalitiesCa good one named Tasha and a bad one named NatashaCand often saw the shadow of her deceased son run around and dance.

Even without considering
appellant=s attack on
Brandon and its impact on H.G., the evidence supports a finding that appellant
was both unstable and indifferent to H.G.=s physical and emotional safety during much of H.G.=s young life.  These instances
support the jury=s finding
that termination is in H.G.=s best interest.  See C.H.,
89 S.W.3d at 27; M.N.G., 147 S.W.3d at 539.

2.  The Plans for the Children by the Agency
Seeking Custody_The
Stability of the Home or Proposed Placement

 








Nash became H.G.=s foster parent on June 8, 2005, and has expressed an interest in
adopting her.  Nash makes her living
providing foster care, makes approximately $50,000 a year, and is not
married.  Nash stated that it is
important for children to have a male role model, and that she has three
brothers, a son, and a nephew.  Vivian
testified at trial that Nash is unfit to adopt H.G. because Nash keeps foster
children who come in and out of her home and therefore cannot provide a stable
environment for children.

However, during the time that
H.G. has been living with Nash, H.G. has experienced less temper tantrums and
self-mutilating behavior and does not act out sexually as often.  Beverly Shockey, H.G.=s CPS caseworker, testified that Nash should be allowed to adopt H.G.
because appellant was unstable and could not provide the long-term therapy that
H.G. needs.  Dr. Polakoff confirmed
Shockey=s recommendation that H.G. needs structure and stability to cope with
her adjustment, depressive and post-traumatic stress disorders. 

The evidence here shows that
H.G.=s lifestyle improved significantly after CPS placed her with Nash,
supporting the jury=s finding
that termination was in H.G.=s best interest.  See C.H.,
89 S.W.3d at 27; M.N.G., 147 S.W.3d at 539.        

3.  The Acts or Omissions of the Parent Which May
Indicate that the Existing Parent-Children Relationship is Not a Proper One

 








Evidence of a parent=s unstable lifestyle can support a factfinder=s conclusion that termination is in the child=s best interest.  In re D.S.,
176 S.W.3d 873, 879 (Tex. App.CFort Worth 2005, no pet.).  A
parent=s drug use, inability to provide a stable home, and failure to comply
with her family service plan support a finding that termination is in the best
interest of the child.  Id.      Numerous witnesses testified that appellant
is emotionally unstable, has anger management issues, and engages in domestic
violence.  In addition to these
behaviors, appellant has a history of drug distribution and use.  The same month that CPS removed H.G. from
appellant=s home,
appellant tested positive for marijuana. 
The evidence at trial also showed that appellant sold methamphetamine
and had cared for H.G. while using marijuana. 
The evidence also showed that prior to the termination trial, appellant
completed her CPS-recommended psychological testing and attended two counseling
appointments. However, appellant did not follow through with her drug treatment
and only came to twenty-four out of forty-four possible visits with H.G.  The last time appellant visited H.G. prior to
the March 22, 2006 termination trial was on October 27, 2005.  Additionally, appellant was consistently late
to the two-hour visitations. 

Based upon our review of the
entire record, we conclude that the jury could have reasonably formed a firm
conviction or belief that termination of appellant=s rights was in H.G.=s best interest.  Accordingly,
we hold that the evidence is factually sufficient to support the jury=s best interest findings, and we overrule appellant=s first issue.

 








V.  Conclusion

Having sustained appellant=s fifth issue, we affirm the trial court=s order terminating appellant=s parental rights to H.G.

 

 

PER CURIAM

 

PANEL F:    LIVINGSTON, HOLMAN, and GARDNER, JJ.

 

DELIVERED:
January 11, 2007











[1]See Tex. R. App. P. 47.4.





[2]Tex. Fam. Code Ann. '
263.405(i) (Vernon Supp. 2006); In re C.R., No. 02-06-00099-CV, 2006 WL
3114468, at *1 (Tex. App.CFort
Worth Nov. 2, 2006, no pet. h.) (mem. op.) (Livingston, J., concurring)
(analyzing this statute); In re D.A.R., 201 S.W.3d 229, 230 (Tex. App.CFort
Worth 2006, no pet.) (same).