

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00191-CV

IN THE INTEREST OF S.R., A CHILD

07-14-00192-CV

IN THE INTEREST OF Z.C., A CHILD

07-14-00215-CV

IN THE INTEREST OF Z.H., A CHILD

On Appeal from the 108th District Court
Potter County, Texas
Trial Court Nos. 83,645-E, 83,829-E, 83,659-E,
Honorable Douglas Woodburn, Presiding

October 6, 2014

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

In this accelerated appeal, Natasha contests the trial court's termination of her parental rights to her children, S.R., Z.C., and Z.H.  Natasha contests the legal and factual sufficiency of the evidence to support the trial court's order for termination as to

any of the predicate events pleaded by the Texas Department of Family and Protective Services. *See* TEX. FAMILY CODE ANN. § 161.001(1) (West 2014).[1] The trial court terminated Natasha's parental rights to S.R. and Z.H. under section 161.001(1)(D), (E), (N), and (O). *See* § 161.001(1)(D), (E), (N), & (O). The trial court terminated Natasha's rights to Z.C. under section 161.001(1)(E), (N), and (O). *See* § 161.001(1)(E), (N), & (O). Further, Natasha contests the legal and factual sufficiency of the evidence to support the trial court's determination that termination of her parental rights as to each child was in that child's best interest. *See* § 161.001(2). We will affirm the trial court's judgment.

Factual and Procedural Background

The Department began its involvement with Natasha on March 11, 2013, when it removed her eleven-year-old daughter, S.R., from her care as a result of an incident involving a physical altercation between S.R. and Natasha. S.R. told investigators that Natasha punched her in the face. Natasha contended that S.R. suffered a bloody nose when Natasha attempted to hold S.R. down on the ground. As a result of the incident, law enforcement attempted to place S.R. in a psychiatric hospital, the Pavillion. However, Natasha refused to admit S.R. to the facility. Further, at that time, Natasha stated that she was not willing to take care of S.R.

Shortly after the incident with S.R., on March 13, 2013, Natasha was observed choking Z.H. and swinging her around by the neck. At the time of this incident, Z.H.

---

[1] Further reference to the Texas Family Code will be by reference to "§ ____" or "section ____."

was fifteen months old. After law enforcement got Z.H. away from her, Natasha was placed in the Pavillion and Z.H. was taken into protective custody by the Department.

Z.C. was born in an ambulance on the way to the hospital. Shortly thereafter, on April 29, 2013, the Department took custody of Z.C. According to the record, Natasha did not receive any prenatal care during her pregnancy with Z.C. and, subsequently, left the hospital without giving the child a name.

After the suits to terminate her parental rights were filed, Natasha had no contact with the children. The record reflects that she never exercised any visitation nor did she contact the Department in an effort to establish any visitation with the children. The record before this Court establishes that the Department had a family service plan in effect for each of the children. Testimony at trial established that Natasha's former caseworker attempted to visit with Natasha about the family service plan while Natasha was incarcerated in the Potter County Jail, however; Natasha refused to meet with or see the caseworker.

Further, since the filing of the suits to terminate her parental rights, Natasha has been incarcerated on one occasion, received residential treatment for a mental illness at the Pavillion, and was placed in the state psychiatric hospital due to her behavior while incarcerated at the Potter County Jail. When directly questioned about Natasha's mental capabilities to take care of the children, the caseworker, Kimberly Soliz, stated that she did not think Natasha was mentally capable to take care of the children. Regarding the effort the Department made to work services with Natasha, Soliz testified as to all the attempts that had been made to contact her since her release from the

3

state hospital. Despite the efforts of the Department, Soliz had never been able to contact or locate Natasha. Prior to the hearing beginning, Natasha's appointed counsel listed all of the steps he had taken in an effort to contact Natasha. Like the Department, all efforts were unsuccessful.

Two of the children, Z.H. and Z.C., are currently in foster care together. The testimony reflects that they have bonded with their foster parents, are happy, and that their individual conditions have markedly improved since they were placed in foster care. Soliz testified that the foster parents are interested in adopting Z.H. and Z.C.

S.R. is currently in a residential treatment facility receiving treatment for mental health and behavioral issues. S.R. has not really improved according to the testimony of Soliz. The long-term plans for S.R. are to relocate her to a more appropriate residential treatment facility with the goal of making a fictive kin placement.

Soliz testified that, after reviewing the files for all of the children, it was her opinion that termination of Natasha's parental rights was in the best interest of each child. To support her conclusion, Soliz cited the court to the following: 1) in the year since termination, Natasha has completed no services; 2) Natasha has failed to even request visitation with the children during the entire period of the pendency of the cases; 3) Natasha has failed to maintain contact with the Department; and 4) the children need to move forward with a goal toward a permanent placement.

At the conclusion of the testimony, the trial court ordered the parental rights of Natasha terminated as to each child. As pertains to S.R. and Z.H., the trial court terminated Natasha's parental rights pursuant to subsections (D), (E), (N), and (O) of

4

section 161.001(1). *See* § 161.001(1)(D), (E), (N), & (O). As to Z.C., the trial court terminated Natasha's parental rights pursuant to subsections (E), (N), and (O) of section 161.001(1). *See* § 161.001(1)(E), (N), & (O).

Natasha has perfected her appeal and, through multiple issues, attacks the legal and factual sufficiency of the evidence to support the finding of the trial court that Natasha committed a predicate event that would support termination of her parental rights. Further, Natasha contends that the evidence is legally and factually insufficient to support the trial court's finding that termination of Natasha's parental rights was in the best interest of each child. Disagreeing with Natasha, we will affirm the judgment of the trial court.

## Standard of Review

The natural right existing between parents and their children is of constitutional dimensions. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. That being so, we are required to strictly scrutinize termination proceedings. *In re G.M.,* 596 S.W.2d 846, 846 (Tex. 1980). However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002).

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes both: (1) one or more acts or omissions enumerated under section 161.001(1); and (2) that termination of the parent-child relationship is in the best interest of the child. § 161.001. Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other. *See In re C.H.,* 89 S.W.3d at 28. While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under section 161.001. *See In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the trial court's order of termination if legally and factually sufficient evidence supports any one of the grounds found in the termination order, provided the record shows that it was also in the best interest of the child for the parent's rights to be terminated. *See id.*

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002); *see* § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014). This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. *In re C.H.,* 89 S.W.3d at 26.

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or

6

conviction as to the truth of the allegations sought to be established. *See In re J.F.C.,* 96 S.W.3d at 266. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

When reviewing the factual sufficiency of the evidence supporting a termination order, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.,* 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.,* 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Analysis

Predicate Act or Omission

We first turn our attention to the allegation that Natasha knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, § 161.001(1)(D), and that she engaged in conduct or knowingly placed the children with persons who engaged in conduct which

endangers the physical or emotional well-being of the children, § 161.001(1)(E). For purposes of analysis of the facts, "endanger" means to expose to loss or injury; to jeopardize. *See In re B.P.,* No. 07-14-00037-CV, 2014 Tex. App. LEXIS 8127, at *11 (Tex. App.—Amarillo July 25, 2014, no pet.) (mem. op.) (citing *In re M.C.,* 917 S.W.2d 268, 269 (Tex. 1996) (per curiam)). It is not necessary that the conduct be directed at the children or that the children actually suffer injury, or even that the conduct constitutes a concrete threat of injury. *See id.* Further, subsection 161.001(1)(D) permits termination for a single act or omission. *See A.S. v. Tex. Dep't of Family & Protective Servs.,* 394 S.W.3d 703, 713 (Tex. App.—El Paso 2012, no pet.) (citing *In re R.D.,* 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied)). Subsection (E) requires evidence of more than a single act, instead there must be clear and convincing evidence of a deliberate or conscious course of conduct. *See id.* (citing *In re K.M.M.,* 993 S.W.2d 228 *(*Tex. App.—Eastland 1999, no pet.)). Abuse of a child by a parent can be used to support a finding of endangerment, even for a child not yet born at the time of the abuse. *See In re I.G.,* 383 S.W.3d 763, 770 (Tex. App.—Amarillo 2012, no pet.). A parent's mental state may be considered in determining whether a child is endangered if that mental state allows the parent to engage in conduct that jeopardizes the physical or emotional well-being of the child. *In re R.W.,* 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Further, the lack of visitation by a parent can emotionally endanger a child's well-being, supporting termination under subsection 161.001(1)(E). *See In re R.M.,* No. 07-12-00412-CV, 2012 Tex. App. LEXIS 10239, at *13 (Tex. App.—Amarillo Dec. 11, 2012, no pet.) (mem. op.).

From the record we have learned that, on March 11, 2013, Natasha had a physical altercation with S.R., who was eleven years old at the time and, as a result of this altercation, S.R. suffered a bloody nose. S.R. told the police that her mother, Natasha, struck her in the face. When confronted with S.R.'s bloody nose, Natasha stated she did not strike S.R. but rather S.R.'s nose was bloodied when Natasha attempted to hold her down on the ground. However, at the same time, Natasha refused to allow S.R. to be placed in the Pavillion to treat any mental illness that she might be suffering. Additionally, at that same time, Natasha advised police and Department personnel that she no longer wanted to be responsible for S.R.'s care.

Two days following the incident with S.R., on March 13, 2013, Natasha was observed at Northwest Texas Hospital choking Z.H. and swinging her around. The record establishes that it took a number of police officers to get Natasha's hands off the child's neck and to subsequently restrain her. Natasha's actions suggest she was under the influence of drugs at the time of the incident.

Z.C. was taken into custody by the Department upon birth. Natasha has had virtually no contact with the child since very shortly after his birth. At the time Natasha left the hospital, she had not bothered to name the child. Nor has she ever attempted to visit with the child. In short, Natasha has demonstrated a complete disregard for the child.

Since S.R., Z.H., and Z.C, have come into the custody of the Department, Natasha has not visited them. Neither has Natasha attempted to comply with any of the requirements for obtaining the children back into her custody. In fact, Natasha has not

9

maintained any contact with the Department. From these facts, we must determine if a reasonable juror could form a firm conviction or belief that the Department had proved the predicate acts alleged. *See In re J.F.C.,* 96 S.W.3d at 266. It has been demonstrated that Natasha has knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. *See* § 161.001(D). Natasha's conduct toward her children as reflected by her actions directed toward S.R. and Z.H. provide the proof of this predicate event, more especially, when viewed in the light most favorable to the finding of the trier of fact, as we must in a review of the legal sufficiency of the evidence. *See In re J.F.C.,* 96 S.W.3d at 266. She engaged in assaultive conduct to two of the children, s*ee In re I.G.,* 383 S.W.3d at 770, has refused services, has not visited with the children since these proceedings began, *see In re R.M.,* 2012 Tex. App. LEXIS 10239, at *13, and has had a very unstable mental history and lifestyle, *see In re R.W.,* 129 S.W.3d at 739. This assaultive conduct supports the termination of her rights to the child born shortly after the incidents of assault. *See In re I.G.,* 383 S.W.3d at 770. Further, our review of the evidence regarding the subsection (E) predicate events establishes, by clear and convincing evidence, a course of conduct engaged in by Natasha which endangers the physical or emotional well-being of the children. § 161.001(1)(E). Accordingly, the evidence is legally sufficient to support the factfinder's determination that Natasha had committed the predicate events alleged. *See In re J.F.C.,* 96 S.W.3d at 266.

Further, when we review the evidence for factual sufficiency, we are to determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.,* 89 S.W.3d at

25. The only evidence heard by the factfinder supports the Department's proof that Natasha knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. *See* § 161.001(1)(D). This evidence also supports that she engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children. *See* § 161.001(1)(E). All of which supports the factual sufficiency of the evidence. *See In re C.H.,* 89 S.W.3d at 25. Accordingly, Natasha's issues regarding the legal and factual sufficiency of the evidence regarding application of subsections (D) and (E) are overruled as to each of the children.

Natasha contends that the trial court heard no evidence of the environment of the children. This contention is without merit and ignores case law that provides that the conduct of the parent can provide the environment from the perspective of subsection (D) and (E). *See In re I.G.,* 383 S.W.3d at 770 (holding that assaultive conduct establishes an environment that can be dangerous to the physical and emotional well-being of a child); *In re R.W.,* 129 S.W.3d at 739 (holding that the mental state of a parent may provide an environment that is dangerous to the emotional or physical well-being of a child).

Remembering that it only requires proof of one statutory predicate ground to support a termination of parental rights, *see In re A.V.,* 113 S.W.3d at 361, we need not address Natasha's other issues regarding predicate grounds under subsections (N) and (O). *See* Tex. R. App. P. 47.1.

11

Best Interest of the Children

Natasha next contends that the evidence is not legally or factually sufficient to support the trial court's determination that termination of her parental rights was in the best interest of the children.

There is a strong presumption that a child's interest is best served by preserving the conservatorship of the parents; however, clear and convincing evidence to the contrary may overcome that presumption. *See In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The Texas Supreme Court has recognized a non-exhaustive list of factors that are pertinent to the inquiry whether termination of parental rights is in the best interest of the child: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* § 263.307 (West 2014) (providing extensive list of factors that may be considered in determining child's best interest). In examining the best interest of the child, we may consider evidence that was also probative of the predicate act or omission. *See In re C.H.*, 89 S.W.3d at 28. The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the

totality of the evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

The Department need not prove all nine *Holley* factors, and the absence of evidence relevant to some of those factors does not bar a finding that termination is in the child's best interest, especially in the face of undisputed evidence that the parental relationship endangered the child. *See In re C.H.*, 89 S.W.3d at 27. No one *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. *In re A.P.,* 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.) The evidence supporting the predicate grounds for termination may also be used to support a finding that the best interest of the children warrants termination of the parent-child relationship. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

As stated above, the evidence supports the finding by the trial court of the predicate events which supported the termination of Natasha's parental rights. This evidence is likewise probative of the best interest of the children. *See In re C.H.*, 89 S.W.3d at 28.

The record further demonstrates that Z.H. and Z.C. are thriving in their foster parent relationship. This alone can lead the trial court to form an opinion that the young children desire to stay in that relationship. *See In re J.M.,* 156 S.W.3d 696, 706 (Tex. App.—Dallas 2005, no pet.).

From the evidence heard by the trial court, Natasha has not been a factor in the children's lives since the Department took custody. She has not participated in services

nor has she attempted visitation. This bears directly on the question of Natasha's abilities to be a proper caretaker for the children. *See In re C.A.J.,* 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.) Additionally, the assaultive nature of Natasha's conduct toward S.R. and Z.H. is a strong factor in assessing the best interest of the children. A parent's inability to provide adequate care for her children, lack of parenting skills, and poor judgment may be considered when evaluating the best interest of the children. *See id.* All of this evidence goes directly to the question of the emotional and physical needs of the children, now and in the future. *See Holley*, 544 S.W.2d at 371–72. Thus, this evidence supports the proposition that termination is in the best interest of the children.

Natasha's absence for the duration of this case demonstrates that she lacks the motivation or ability to acquire proper parenting skills. *See Wilson v. State,* 116 S.W.3d 923, 930 (Tex. App.—Dallas 2003, no pet.). In connection with this analysis is the fact that Z.H. and Z.C. are thriving in foster care and that the foster parents desire to adopt. These facts weigh heavily in favor of termination being in the best interest of the children.

That S.R. is not doing as well in her residential treatment program does nothing to defeat the best interest determination by the trial court. The evidence at trial demonstrated that Natasha had effectively given up on trying to cope with or handle the mental issues demonstrated by S.R. S.R. is now receiving treatment and has the chance to handle her mental illness issues that was not present while she was with Natasha.

14

While we have not addressed all of the *Holley* factors, those that have been addressed clearly demonstrate that the best interests of these children is served by terminating the parental relationship they have with Natasha. Accordingly, Natasha's issue to the contrary is overruled.

## Conclusion

Having overruled Natasha's issues pertaining to the sufficiency of the evidence to support termination, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice
