

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00083-CV

_____

IN THE INTEREST OF A.D., A CHILD

On Appeal from the 307th District Court
Gregg County, Texas
Trial Court No. 2021-696-DR

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

The Department of Family and Protective Services (the Department) filed a petition to terminate Mother's parental rights to her eight-year-old son, Adam.[1] Following a bench trial, the trial court terminated Mother's parental rights after finding that (1) she constructively abandoned Adam, (2) she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain Adam's return, and (3) termination of her parental rights was in Adam's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (b)(2).

On appeal, Mother questions whether the Department made reasonable efforts to reunite her with Adam[2] and argues that the evidence was factually insufficient to support the trial court's best-interests finding. We conclude that (1) the unchallenged Ground O finding supports the trial court's judgment on statutory grounds, and (2) factually sufficient evidence supports the trial court's best-interests finding. As a result, we affirm the trial court's judgment.

---

[1] We use pseudonyms to protect the identity of the child. *See* TEX. R. APP. P. 9.8.

[2] Under Ground N of Section 161.001(b)(1), statutory grounds for terminating the parent-child relationship exist if there is clear and convincing evidence that a parent

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>> (i)  the department has made reasonable efforts to return the child to the parent;
>> (ii)  the parent has not regularly visited or maintained significant contact with the child; and
>> (iii)  the parent has demonstrated an inability to provide the child with a safe environment.

TEX. FAM. CODE ANN. § 161.001(b)(1)(N). The trial court entered a finding that the Department made reasonable efforts to return the child to Mother. Although Mother's brief does not specifically challenge the legal and factual sufficiency of evidence supporting the trial court's finding on statutory grounds for termination of the parent-child relationship, we broadly interpret Mother's brief as a challenge to the Ground N finding.

## I.     The Evidence at Trial

Jessica Galindo, an investigative supervisor for Child Protective Services (CPS), testified that, because of CPS's intervention, Adam was removed from Mother's care when he was six months old, and his grandparents were named as the child's managing conservators. Amber Preston, the Department's conservatorship caseworker, testified that, although Mother was named as a possessory conservator, she did not exercise her rights to visit Adam. According to Galindo, Adam's mental health became problematic, and he accumulated a lengthy "history of aggressive and violent behavior" toward his grandparents. On July 1, 2020, Adam attempted to kill his grandmother. As a result, he was moved to a mental health treatment facility in San Marcos, Texas.

On March 8, 2021, Galindo met with Adam's therapist, who stated that the child was a danger to himself and others, still expressed homicidal ideations, and had not made therapeutic progress. The therapist told Galindo that Adam felt he would kill if he were returned to his grandparents. According to Galindo, Adam's therapist recommended that he be placed into the Department's custody, and "the family" asked for the same. Preston testified that the Department made unsuccessful efforts to determine if Adam could be safely placed with any family member. As a result, the Department filed its petition to terminate parental rights on April 2021.

That same month, Adam was placed with the "Roy Maas Youth Alternative" facility, where he received more specialized treatment. Preston testified that Adam, who was "very, very behind" on his education, was making significant progress in the facility's school. Preston added

3

that Adam had not shown any recent homicidal urges and had only a "moderate" level of incidents. Lesa Maatouk, Adam's Court Appointed Special Advocate, testified that the facility was safe and that Adam was well cared for.

Mother's first family service plan was made by an order of the trial court on June 9, 2021. Preston testified that Mother participated in a home study, took one drug test, and attended two family counseling sessions, but failed to complete any portion of her court-ordered family service plan. Preston said that Mother did not have the ability to manage Adam's "current level of need," was unable to provide medical care for him, and stopped contacting the Department, which Preston said indicated a lack of willingness to build a parent-child relationship. According to Preston, Mother said that she had not seen or talked to Adam since 2017. Even so, Preston decided to go "sort of above and beyond to try to help [Mother] to develop a relationship" with Adam. A second family service plan was ordered in April 2022, and Preston scheduled a therapeutic visit between Adam and Mother, which Mother attended. Preston testified that Mother made one more visit, did not schedule any others, stopped participating, and failed to respond to Adam's therapist's inquiries.

Although duly served and represented by counsel, Mother failed to appear for trial. Preston testified that Mother, who had only visited Adam twice in over a year and had failed to take eight requested drug tests, had not shown a willingness or ability to handle Adam's psychological issues. Considering that and Mother's lack of contact with the child through the years, Preston testified that placing the child with Mother would significantly impair Adam's

4

physical health or emotional development and would put him in danger of "a very, very severe setback."

Maatouk said that Mother had not shown that she could provide a safe, stable environment for Adam and that termination of her parental rights was in Adam's best interests. Both Maatouk and Preston testified that Adam wished to be adopted.

After hearing this evidence, the trial court terminated Mother's parental rights to Adam.

## II. The Unchallenged Ground O Finding Supports the Trial Court's Judgment on Statutory Grounds

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (citing TEX. FAM. CODE ANN. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re M.A.*, No. 06-22-00011-CV, 2022 WL 4546576, at *4 (Tex. App.—Texarkana Sept. 29, 2022, pet. denied) (mem. op.) (quoting *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.)). Here, Mother has failed to challenge the legal or factual sufficiency of the evidence supporting the trial court's Ground O finding.

Instead, Mother questions whether the trial court made reasonable efforts to reunite her with Adam. "A family service plan is designed to reunify a parent with a child who has been removed by the Department." *In re I.M.*, No. 06-21-00002-CV, 2021 WL 1991271, at *11 (Tex. App.—Texarkana May 19, 2021, pet. denied) (mem. op.) (quoting *In re J.C.*, No. 04-17-00828-

5

CV, 2018 WL 1733139, at *3 (Tex. App.—San Antonio Apr. 11, 2018, no pet.) (mem. op.)) (citing *Liu v. Dep't of Fam. & Protective Servs.*, 273 S.W.3d 785, 795 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *In re A.H.*, No. 09-19-00167-CV, 2019 WL 4865196, at *4 (Tex. App.— Beaumont Oct. 3, 2019, no pet.) (mem. op.)). "'Implementation of a family service plan by the Department is considered a reasonable effort to return a child' to his parent 'if the parent has been given a reasonable opportunity to comply with the terms of the plan.'" *Id.* (quoting *In re J.C.*, 2018 WL 1733139, at *3); *see In re J.J.W.*, No. 06-09-00030-CV, 2009 WL 2432634, at *4 (Tex. App.—Texarkana Aug. 11, 2009, pet. denied) (mem. op.); *M.C. v. Tex. Dep't of Fam. & Protective Servs.*, 300 S.W.3d 305, 309–10 (Tex. App.—El Paso 2009, pet. denied) (mem. op.); *In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.) (finding that preparation and administration of service plans by the Department are reasonable efforts to reunite a parent and a child).

Mother was involved in this case since the Department filed its petition in April 2021. In a June 9 order, the trial court found that Mother had reviewed and understood the Department's family service plan, and it ordered her to comply with the plan. In April 2022, the trial court gave Mother another family service plan, which she acknowledged and signed. She attended two therapeutic visits with Adam but then stopped participating. Because Mother had reasonable opportunity before the September 2022 trial to comply with the terms of the Department's family service plans, the Department made reasonable efforts to reunite her with Adam.

The evidence shows that Mother failed to comply with the terms of either family service plan, and on appeal, Mother does not challenge the trial court's Ground O finding, which we

6

conclude supports the trial court's judgment on statutory grounds for termination of parental rights. Accordingly, we overrule Mother's first point of error.

## III. Factually Sufficient Evidence Supports the Trial Court's Best-Interests Finding

Next, Mother does not challenge the legal sufficiency of the evidence supporting the trial court's best-interests finding. Instead, she challenges the best-interests finding on factual sufficiency grounds.

### A. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d at 343 (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)).[3] This Court is required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20)).

---

[3]"'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *In re E.J.Z.*, 547 S.W.3d at 343 (quoting TEX. FAM. CODE ANN. § 101.007) (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). "This standard of proof necessarily affects our review of the evidence." *Id.*

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *In re L.E.S.*, 471 S.W.3d at 920 (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine "'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'"" *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 108) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002))). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In making this determination, we undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *Id.* (quoting *In re A.B.*, 437 S.W.3d at 503) (quoting *In re C.H.*, 89 S.W.3d at 26)).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *Id.* (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994))) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003)). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d at 26)).

8

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re A.B.*, 646 S.W.3d 83, 96 (Tex. App.—Texarkana 2022, pet. denied) (quoting *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without the most solid and substantial reasons.'" *Id.* (quoting *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976))).

> In determining the best interests of the child, courts consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* (quoting *In re N.L.D.*, 412 S.W.3d at 818–19) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b).

The Department is not required to present proof of each *Holley* factor. *In re M.C.*, 482 S.W.3d 675, 688 (Tex. App.—Texarkana 2016, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27). "When considering the child's best interest, we may take into account that a parent is unable to provide adequate care for [her] child." *Id.* (citing *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.)). The parent's "past performance as a parent [is] relevant in determining the child's best interest." *Id.* (citing *In re C.H.*, 89 S.W.3d at 28). Further, we may

9

consider evidence used to support the grounds for termination of parental rights in the best-interest analysis. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

**B.      Analysis**

As for the first *Holley* factor, Mother had not cared for Adam since he was a baby. There was no evidence that she loved the child or that the child loved or was bonded to her. Preston and Maatouk testified that Adam wished to be adopted, which weighs in favor of terminating Mother's parental rights.

Next, Adam's emotional needs were great due to his psychological issues. Adam had homicidal tendencies and was placed in a mental health treatment facility in San Marcos but required even more specialized care and therapeutic counseling. Preston testified that Adam could suffer a severe setback if returned to Mother, and as a result, his therapist recommended that Adam be placed with the Department. Preston testified that Mother had not shown willingness or the ability to address Adam's psychological issues. From this evidence, we conclude that the second and third *Holley* factors weigh in favor of terminating Mother's parental rights.

As for the remaining *Holley* factors, Mother's lack of parental ability was demonstrated by the fact that she had been voluntarily absent for most of Adam's life. Although the Department's family service plan provided programs available to assist Mother, she failed to take advantage of them. While there was no evidence that Mother had any plan for Adam, the Department's plan was to continue the child in a specialized treatment facility until it could find an appropriate adoptive placement for him. Maatouk testified that Mother was unable to provide

10

a safe and stable home for Adam, and Preston indicated that Mother was unwilling to do so. Mother's failure to visit the child in order to develop a relationship with him and her abandonment of the family service plan indicated that the existing parent-child relationship was not a proper one. *See In re D.W.*, 533 S.W.3d 460, 471 (Tex. App.—Texarkana 2017, pet. denied); *In re X.R.L.*, 461 S.W.3d 633, 641 (Tex. App.—Texarkana 2015, no pet.). Because Mother did not appear for trial, there was no evidence of any excuses on her behalf. We find that the remaining *Holley* factors weigh in favor of terminating Mother's parental rights to Adam.

Considering the *Holley* factors, and in light of all of the evidence, the trial court could have reasonably formed a firm belief or conviction that termination of Mother's parental rights was in Adam's best interests. Consequently, we conclude that the evidence was factually sufficient to support the best-interest finding, and we overrule Mother's last point of error.

## IV.    Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:    February 17, 2023
Date Decided:      February 21, 2023

11